ISLAND MILL LUMBER CO. *v.* CITY OF ALPENA.

1. TAXATION—VALUATION FOR PURPOSES OF ASSESSMENT—FRAUD.
   Evidence that the assessed valuation of plaintiff's real estate was increased by the State tax commission from $20,000 to $35,000, that the property was worth from $20,000 to $25,000, that other property was similarly treated at the same time, so that plaintiff's total taxes were reduced, that the State tax commission had at the same time raised the total assessed valuation of the city from $6,071,380, as fixed by the local authorities, to $9,417,245, is insufficient to show fraud or bad faith.

2. SAME.
   It will be presumed that the members of the tax commission exercised honesty and their best judgment in performing their official duty: the burden is on the plaintiff, in an action to recover back taxes paid under protest, to establish fraud, which cannot be inferred from a mere difference in judgment.

3. FRAUD—EVIDENCE—TAXATION.
   An assessment is not fraudulent merely because the valuation is excessive, unless an improper motive is shown: but if it is purposely made too high through prejudice or a reckless disregard of duty, in opposition to what must necessarily be the judgment of all competent persons, that tax is invalid.

Error to Alpena; Emerick, J. Submitted June 16, 1913. (Docket No. 128.) Decided July 18, 1913.

Assumpsit by the Island Mill Lumber Company against the city of Alpena for the recovery of taxes paid under protest. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Joseph H. Cobb,* for appellant.

*Guy D. Henry,* for appellee.

STEERE, C. J. Plaintiff, a Michigan corporation owning property and engaged in the lumber business in the city of Alpena, brought this action against said city to recover back an amount of taxes paid under duress and protest, claiming that the same had been fraudulently assessed by reason of intentional overvaluation of the property upon which the taxes were levied. The case was tried before a jury in the circuit court of Alpena county on September 17, 1912, and at the conclusion of the evidence the court directed a verdict for defendant on the ground that the testimony produced by plaintiff was not sufficient to raise an issue of fact on the question of wilful, intentional, and fraudulent overvaluation of plaintiff's property for taxation purposes.

Plaintiff's assignments of error all relate to the charge of the court in directing a verdict in favor of defendant and present the single question of whether there was probative testimony in the case which tended to show a fraudulent assessment and so raising an issue of fact which should have been submitted to the jury.

For the year 1911 the local assessing officers of Alpena, consisting of the city controller and board of review, assessed taxes against defendant's real estate on a valuation of $20,000 and against its personal property on a valuation of $54,000. Under the law

upon that subject, the assessment roll was completed earlier for city than for State and county taxes; the latter not being equalized, apportioned, and spread until fall. Only the State and county taxes are involved in this controversy; it being stated in its counsel's brief, and not controverted, that plaintiff paid the city and school taxes assessed against it in July on the valuations as made by the local officers.

Before the time arrived for equalizing, apportioning, and spreading the State and county taxes upon the assessment roll, the board of State tax commissioners reviewed the roll, under the authority given said board by statute, and appraised the property throughout the city for taxation purposes, which resulted in an increase of the aggregate assessed valuation throughout the city of 55 per cent. In this review of the roll plaintiff's real estate was valued for taxation at $35,000 and its personal property at $64,500. The State and county taxes were levied and spread upon such revision of the roll and revaluation. Plaintiff declined to pay its taxes on that basis, and the city treasurer levied upon and was about to sell certain of its personal property to collect such taxes, when plaintiff paid them under protest as stated.

Plaintiff's declaration charges fraudulent assessment of both its real and personal property. During the progress of the trial plaintiff's counsel stated no objection was raised as to the latter, but it was the contention that the board of State tax commissioners had acted knowingly, intentionally, and fraudulently in fixing the valuation on plaintiff's real estate for taxation purposes, as shown. In support of this contention, plaintiff introduced the testimony of three witnesses as to value: R. H. Rayburn, its president and manager; William H. Campbell, its vice president; and William Marion, the superintendent of another sawmill in the city. The two officers of plain-

tiff placed the value of its real estate at $20,000, Marion at from $20,000 to $25,000.

These witnesses made comparison of plaintiff's mill with other mills with somewhat varying views. The witnesses were parties interested in the taxation of such property. They were giving their estimate and judgment of valuations from their point of view. To review their examinations and cross-examinations, with a view of weighing the relative strength or weakness of their testimony, would be foreign to this inquiry. If their testimony, taken at its strongest, had any probative force to establish fraudulent conduct on the part of the tax commission, it was for the jury to weigh. We must assume that they testified honestly, as they viewed the matter, and gave their best judgment. The assumption of honesty and the exercise of their best judgment obtains also as to the members of the tax commission in the performance of their official duties, and with it goes extensive experience throughout the State in reviewing tax rolls and appraising property for taxation purposes. The burden is upon the plaintiff to prove to the contrary and show fraud. Does the shown diversity of opinion between these parties as to values raise that issue? Fraud cannot be predicated upon or inferred from an honest difference in judgment. Aside from the overvaluation, according to plaintiff's witnesses, there is no evidence of design against plaintiff or of a discriminating overvaluation to its injury from which wrongful or fraudulent purpose or intent is to be inferred. The result of this revision of the assessment roll indicates the contrary. Plaintiff was benefited by it, taken as a whole.

The entire assessment roll of the city of Alpena was in evidence and before the court showing the valuation first made by the local officers and as revised by the commission. As bearing on the question of wilful, intentional, and fraudulent assessment, it was proper

evidence to consider in passing upon the probative force of the testimony of plaintiff's witnesses and in determining whether it tended to raise an issue upon that question. By this assessment roll it is shown that the whole amount of taxes to be levied that year was $75,322.20. The assessed valuation of taxable property as fixed by the local assessors was $6,071,380, made up of real property $4,056,665 and personal $2,014,725; the rate of State and county taxes on such basis being .0124. As raised and fixed by the State tax commission, the total assessed valuation of taxable property was $9,417,245 (an increase of $3,071,380), made up of real property $6,392,895 and personal $3,024,350; the rate of State and county taxes on such basis being .008 per cent.

Plaintiff's taxes on real estate as valued by the local assessors would be $248, and as valued by the tax commission was $280, or an increase of $32; but plaintiff's taxes on personal property as valued by the local assessors would be $675.80 and as valued by the tax commission $516, or a reduction of $159.80. As a total result of the action of the tax commission in revising the assessment roll of that year, plaintiff's entire taxes were reduced $127.80.

When the only claim of proof of fraud is the inference to be drawn from proof of overvaluation, we think the above result is proper to consider in determining whether or not any inferences of intentional fraud or injury can be legitimately drawn from the evidence in the case considered as a whole. Fraud cannot be presumed from mere suspicion nor from facts and circumstances which are entirely consistent with an honest purpose. *Henneberger* v. *Matter,* 88 Mich. 396 (50 N. W. 369).

Counsel for plaintiff contend that the question of fraud is never a question of law but is always held by all courts to be a question of fact for the jury, citing numerous cases. This is unquestionably correct,

when there is in the case legitimate evidence of fraud to raise the issue, but whether or not there is any probative evidence of fraud in the case is a question of law for the court. Fraud is never presumed; there must be evidence tending to prove it. The law upon the question of fraudulent overvaluation for taxation purposes is well settled in this State. It must be something more than an honest mistake in judgment to defeat a tax.

In 2 Cooley on Taxation (3d Ed.), p. 1459, it is said:

"An assessment is not fraudulent merely because of being excessive, if the assessors have not acted from improper motive; but if it is purposely made too high through prejudice or a reckless disregard of duty in opposition to what must necessarily be the judgment of all competent persons, * * * the case is a plain one for the equitable remedy by injunction."

In such case the tax is necessarily invalid.

The above rule has been quoted by this court with approval and consistently followed. The subject is exhaustively discussed, with citation of numerous authorities, in *Pioneer Iron Co.* v. *City of Negaunee*, 116 Mich. 430 (74 N. W. 700), and *City of Muskegon* v. *Boyce*, 123 Mich. 535 (82 N. W. 264).

Considering the testimony produced in this case in its most favorable aspect for plaintiff, we conclude, with the trial court, that it fails to present any evidence legitimately tending to sustain the charge that the board of State tax commissioners, in disregard of duty, recklessly, intentionally and fraudulently overvalued plaintiff's property for taxation, or that thereby plaintiff was compelled to pay more than its just proportion of the taxes.

The action of the trial court in directing a verdict for defendant is sustained, and the judgment is affirmed.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.